UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Mark Rossignol

    v.                                Civil No. 09-cv-110-JD
                                         Opinion No. 2010 DNH 021

Liberty Life Assurance
Company of Boston


O R D E R

Mark Rossignol brings an Employee Retirement Income Security Act ("ERISA") action to recover benefits under a long-term disability policy provided by his former employer, Wingfoot Commercial Tire Systems, LLC ("Wingfoot") through Liberty Mutual Assurance Company ("Liberty").  See 29 U.S.C. § 1132(a)(1)(B). The parties have filed their joint statement of material facts. Both Rossignol and Liberty move for judgment on the administrative record.


Background[1]

Mark Rossignol worked as a sales representative for Wingfoot, beginning in 1985.  As a Wingfoot employee, Rossignol

---

[1]The factual background information is presented in detail in the parties' joint statement of material facts (document no. 12) and is summarized here.

participated in its long-term group disability plan, which was insured by and issued through Liberty.  On October 10, 2003, while working, Rossignol lifted a 125-pound truck tire and felt a pop in the left side of his low back and then pain in his back, radiating down his leg.

Rossignol was first seen for the back injury on October 30, 2003, when Dr. Ashraf Guirgues noted that Rossignol probably had a recurrence of disc herniation, planned to obtain an MRI, and restricted Rossignol from lifting, bending, and squatting.  In December, Guirgues noted that the MRI results showed degenerative disc disease, scar formation, swelling at the L5 and S1 nerve roots, but no new herniation.  Dr. Guirgues did not recommend surgery but instead suggested limited activity and exercises to strengthen his back.

Because he continued to have back pain, Rossignol saw Dr. Sanchez in February of 2004, who also found only degenerative changes in the lumbar spine.  Dr. Sanchez completed two New Hampshire Workers' Compensation Medical Forms for Rossignol in February of 2004, with a diagnosis of sacroiliac arthropathy.  Dr. Sanchez indicated that Rossignol was unable to work.  Rossignol then saw Dr. Asi Hacobian in late February of 2004, who also completed a Workers' Compensation Medical Form for Rossignol in which she referred to her office notes instead of completing

part of the form and indicated that Rossignol was then working, although she provided no detail about his work.  Rossignol continued to treat with Dr. Sanchez, Dr. Hacobian, and Dr. Guirgues through 2004.  In January of 2005, Rossignol was seen by Dr. Kelly Ly and Dr. David Janfaza.  Their notes document Rossignol's back injuries and continued pain.  During 2005, Rossignol underwent several blocking procedures without long-term beneficial effect.  In August of 2005, Rossignol was awarded Social Security disability benefits.

    Dr. Albert Fullerton completed an independent medical examination of Rossignol at Liberty's request in March of 2006.  Dr. Fullerton reported Rossignol's history of his back problem and Rossignol's belief that he could not work because of pain.  He concluded, however, that although Rossignol remained disabled as to his former work at Wingfoot, he should be able to work as an "inside sales person" with some restrictions on his activities.  Dr. Fullerton completed a Physical Capabilities form, which indicated that Rossignol was capable of sedentary work.

    A Labor Market Survey, completed in April of 2006, identified several occupations that were compatible with Rossignol's education and physical capabilities, including work as an inside sales representative, in automotive sales, and in

other sales positions.  In August of 2006, a private investigator hired by Liberty reported that Rossignol held a New Hampshire real estate license and was employed by a real estate agency in Portsmouth, New Hampshire, as an independent contractor.

For purposes of Rossignol's workers' compensation claim, Dr. Edgar Robertson examined Rossignol and reviewed Rossignol's medical records on November 22, 2006.  Dr. Robertson diagnosed degenerative lumbar disc disease with scarring of nerve roots due to prior surgeries.  He stated that no further treatment would be helpful.  Dr. Robertson also stated:  "I do not believe he will be gainfully employed as I believe he is completely disabled from his former occupation.  He would not be able to be employed in any type of capacity that requires continuous sitting or standing for prolonged periods of time."  Rossignol settled his workers' compensation claim in May of 2007.

On June 11, 2007, Rossignol's counsel wrote to Wingfoot, requesting an application for long-term disability benefits, and Wingfoot forwarded the letter to Liberty.  Wingfoot informed Liberty that Rossignol had received workers' compensation benefits from October 13, 2003, through August 20, 2006, that he had received partial benefits after that time, and that his workers' compensation claim was settled on May 22, 2007.  In a letter dated June 25, 2007, Liberty notified Rossignol that he

had failed to follow the contractual requirements for notice and proof of his claim and asked for an explanation and other information by August 2, 2007. When the requested information was not provided by the deadline, Liberty denied Rossignol's claim and notified Rossignol of its decision on August 10, 2007.

Liberty received a letter, which is dated August 7, 2007, from Rossignol's counsel on August 17, 2007, with a questionnaire signed by Rossignol on August 1, 2007, and many medical records and other information pertaining to Rossignol's disability claim. Liberty then received information about Rossignol's workers' compensation claim. Liberty approved Rossignol's claim for a twenty-four month period on October 15, 2007, with a date of disability determined to be October 13, 2003, and an "elimination period" of twenty-six weeks, making him eligible to begin to receive benefits as of April 12, 2004. Benefits were to be paid until April 11, 2006, for the period that Rossignol could not return to his former work at Wingfoot.

Liberty then reviewed the records to determine whether Rossignol was eligible to receive benefits after the end of the twenty-four month period. To be eligible for extended benefits, Rossignol would have to show that he was disabled from any occupation, not just his own former work. On December 27, 2007, Liberty denied Rossignol's claim for benefits extending after the

"own occupation period" because, based on Liberty's review of the records, after April 11, 2006, Rossignol could work as a sales representative at an outbound call center, an automotive sales person, or an automotive leasing sales representative.

Through counsel, Rossignol appealed Liberty's decision and sent additional medical records, covering the period between April of 2006 to August of 2008, to support his claim. As part of the appeal process, Liberty referred Rossignol's file to Milton Klein, DO, for peer review. Dr. Klein reviewed the file, including Rossignol's medical records, communicated with Dr. Janfaza, and concluded that there was no clinical evidence of impairment around April 11, 2006. On August 19, 2008, Liberty upheld its decision to deny benefits after April 11, 2006. Rossignol filed an action in this court for review of Liberty's decision under ERISA.

## Standard of Review

In an ERISA case, when the benefit plan gives the administrator the discretion to determine a participant's eligibility for benefits, the "reviewing court must uphold that decision unless it is arbitrary, capricious, or an abuse of discretion." <u>Cusson v. Liberty Life Assurance Co. of Boston</u>, --- F.3d ---, 2010 WL 118384, at *7 (1st Cir. Jan. 14, 2010). In the

absence of discretionary authority, the decision is reviewed de novo.  See Richards v. Hewlett-Packard Corp., --- F.3d ---, 2010 WL 157480, at *5 (1st Cir. Jan. 19, 2010).  The plan at issue in this case provides:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.  Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

Joint Statement, ¶ 6.  The same language has been construed to convey the necessary discretion for arbitrary and capricious review.  Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3d 1, 9 (1st Cir. 2009).

Rossignol nevertheless argues that other plan terms are "unclear, conflicting and ambiguous" and contends that the court should apply the de novo standard.  As Liberty points out, the challenged plan terms are clearly defined.  In addition, Rossignol cites no authority to support his theory that despite a clear grant of discretionary authority in the plan, a lack of clarity or ambiguity in other plan terms can support application of the de novo standard.  In this case, the arbitrary and capricious standard applies.

Another issue pertaining to the standard of review requires consideration.  When a plan administrator both makes eligibility

determinations and pays for benefits, a structural conflict of interest exists.  Met. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348-50 (2008).  A party claiming benefits who is challenging the plan administrator's decision bears the burden of showing "that the conflict influenced [the plan administrator's] decision."  Cusson, 2010 WL 118284, at *8.

Because Liberty, as the plan administrator and insurer, both makes eligibility determinations and pays benefits, a structural conflict of interest exists.  Rossignol, however, did not raise the issue, much less show that the conflict influenced Liberty's decision.  Therefore, the court applies the arbitrary and capricious standard without considering the effect, if any, of the structural conflict.

Under the arbitrary and capricious standard, the court "inquire[s] into whether [the plan administrator's] decision was reasoned and supported by substantial evidence."  Medina v. Met. Life Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009).  "Evidence is substantial if it is reasonably sufficient to support a conclusion."  Stamp v. Met. Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008) (internal quotation marks omitted).  The decision will be affirmed, therefore, "if there is any reasonable basis for it."  Medina, 588 F.3d at 45 (internal quotation marks omitted).

Discussion

The disability policy in this case provides long-term disability benefits to a covered person who submits proof of disability due to injury or sickness. "Disability," as used in the policy, means, for the first twenty-four month period, that the person "is unable to perform the Material Substantial Duties of his Own Occupation." After the twenty-four month period, "disability" means that "the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." "Material and Substantial Duties" are "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

After granting Rossignol benefits for the twenty-four month "Own Occupation" period from April 12, 2004, through April 11, 2006, Liberty determined that although Rossignol could not return to his own occupation, he could work at another occupation and discontinued his benefits. In its letter denying Rossignol's claim for long-term disability benefits, Liberty stated that Rossignol's restrictions and limitations were due to left L5-S1 herniation with residual S1 radiculopathy, that the medical evidence showed he was able to perform sedentary work, that he

had certain listed transferable skills from his prior work, and that he could work as a sales representative, an automotive sales person, or an automotive leasing representative.  Because Liberty determined that Rossignol was able to work at other occupations, it denied his application for benefits after the end of the twenty-four month "Own Occupation" period on April 11, 2006.  On appeal, Liberty upheld the denial of benefits, based on Dr. Klein's peer review and the vocational assessment.

Rossignol argues that Liberty's decision lacks a reasonable basis because medical reports that he provided agreed that he was disabled and unable to work with reasonable continuity at any occupation.  He challenges Liberty's reliance on the independent peer review report provided by Dr. Klein, and charges that Liberty's decision does not reference any of the medical evidence in the record other than Dr. Klein's review.  Rossignol asserts that Dr. Klein's opinions are invalid because he did not examine Rossignol and that his opinions are inconsistent with other medical evidence.  Liberty defends its decision, pointing to supporting evidence in the record.[2]

---

[2] Liberty refers repeatedly to Rossignol's real estate license and to his employment at a real estate agency, which was discovered by Liberty's private investigator.  Liberty's decision to deny benefits and its decision on appeal, however, do not mention Rossignol's real estate license or employment.  Further, Liberty fails to show that Rossignol was gainfully employed as a

A.  Medical Evidence

Opinions of treating physicians are not entitled to special deference or consideration.  Richards, 2010 WL 157480, at *7.  The insurer of an ERISA plan is not required to conduct a physical examination of a claimant for purposes of a benefits determination, and instead, a denial may be based on a review of the claimant's medical records.  Id., at *8 (citing Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 526 (1st Cir. 2005)).  When reviewing, examining, and treating physicians give differing opinions, the plan administrator has discretion to make a reasonable choice.  Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 32 (1st Cir. 2001).  In addition, plan administrators are not required to provide an explanation as to why reliable evidence is credited despite its conflict with the opinions of treating physicians.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

In this case, Rossignol argues that Liberty's decision was arbitrary because on appeal the plan administrator credited Dr. Klein's review opinion while ignoring the opinions of his treating physicians.  Liberty stated in its initial denial letter

---

real estate agent or that he could work with "reasonable continuity" in that capacity.  Liberty's references to the real estate job are not persuasive.

that it considered Rossignol's medical records from Dr. Guirgues, Dr. Sanchez, Dr. Janfaza, and an independent medical examination conducted by Dr. Fullerton.  Dr. Guirgues appears to have given a an opinion early in Rossignol's treatment that he then was "on limited work duty" and that Rossignol was limited to lifting twenty pounds, but Dr. Guirgues did not provide an opinion that he was disabled from all work.  Dr. Sanchez stated on Workers' Compensation forms in 2004 and 2005 that Rossignol was unable to work.  In a letter dated June 26, 2006, Dr. Janfaza stated that at Rossignol's request he reviewed Rossignol's treatment notes and gave an opinion that Rossignol was disabled by pain from all work.

Dr. Fullerton conducted an independent medical examination of Rossignol on March 3, 2006.  He concluded that Rossignol could not benefit from additional medical treatment, that he had a fifteen percent impairment, and that he could not return to his previous work at Wingfoot.  He also concluded, however, that Rossignol was capable of sedentary work without restrictions on standing, walking, or sitting, which would allow him to work as an "inside sales person" with certain limitations on lifting, pushing, and bending.

Dr. Robertson conducted an examination of Rossignol on November 22, 2006, for purposes of Rossignol's workers'

compensation claim.  Dr. Robertson also believed that Rossignol had reached a medical endpoint.  He stated: "I do not believe [Rossignol] will be gainfully employed as I believe he is completely disabled from his former occupation.  He would not be able to be employed in any type of capacity that requires continuous sitting or standing for prolonged periods of time.  His limitation is back pain due to severe degenerative changes in the lumbar spine as well as scarring of nerve roots."

   Dr. Klein undertook a "peer review" of Rossignol's records in August of 2008 for Liberty's claims process to determine the extent of Rossignol's impairment as of April 11, 2006.  As part of his review, Dr. Klein discussed Rossignol's case by telephone with Dr. Janfaza, who told Dr. Klein that he had no opinion about the extent of Rossignol's impairment.  Dr. Klein concluded that self-reported back pain was the most significant limiting factor for Rossignol's activities around April 11, 2006, and that there was no clinical evidence of impairment at that time.

   Dr. Robertson's opinion of Rossignol's ability to work suggests the same limitations found by Dr. Fullerton.  Although Dr. Janfaza gave an opinion in June of 2006 that Rossignol was disabled from all work, he told Dr. Klein in August of 2008 that he had no opinion about the extent of Rossignol's impairment.  Dr. Klein concluded that Rossignol was not impaired as of April

11, 2006.  Despite conflicting opinions, substantial medical evidence in the record supports Liberty's conclusion that Rossignol was not disabled from all work.

B.  Vocational Reports

Rossignol also asserts that he offered a vocational report that showed he was unable to work and that Liberty offered no contrary evidence.  Rossignol submitted the vocational assessment dated April 2, 2007, prepared by Amy E. Vercillo at the request of Rossignol's counsel.  Vercillo relied on the opinions of Dr. Robertson in November of 2006 and Dr. Janfaza in August of 2005 as to Rossignol's limitations and concluded that Rossignol was unable to sustain any employment on a regular basis.

In contrast, however, Dr. Fullerton examined Rossignol and completed a Physical Capabilities form in March of 2006, showing that Rossignol was capable of sedentary work without limitations on his ability to sit, stand, or walk, so that he remained capable of working as an inside sales representative.  A Labor Market Survey Report completed for Liberty in April of 2006, concluded that Rossignol was capable of a number of listed jobs in inside sales, customer service, dispatching, and sales management.  Another vocational assessment by the vocational case manager at Liberty in December of 2007 found that Rossignol

retained the ability to work as a sales representative, an automobile sales representative, or an automotive leasing sales representative.

Therefore, contrary to Rossignol's representation, other vocational assessments in the record support Liberty's decision.

C.   Social Security Disability Decision

Rossignol argues that Liberty's decision denying him benefits is inconsistent with the Social Security Administration's decision granting him disability benefits. Disability determinations made by the Social Security Administration may be considered but are not binding on plan administrators making determinations under ERISA.  Pari-Fasano v. ITT Hartford Life & Acc. Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000).  Rossignol has not shown that the social security decision would have particular weight in this case.

Therefore, although Liberty's decision to deny benefits is at odds with the social security determination, that conflict does not show that Liberty's decision is arbitrary or capricious.

D.  Determination

The ERISA record includes evidence that supports Rossignol's claim that he was unable to do the work of any occupation as of

15

April 12, 2006. The record also includes evidence that he retained the ability to do jobs at the sedentary level. A plan administrator's decision must be upheld if there is a reasonable basis for it, even if there is also contrary evidence. <u>Tsoulas v. Liberty Life Assurance Co. of Boston</u>, 454 F.3d 69, 78 (1st Cir. 2006). Because the record provides a reasonable basis for Liberty's decision, it is affirmed.

## Conclusion

For the foregoing reasons, the plaintiff's motion for judgment on the administrative record (document no. 14) is denied. The defendant's motion for judgment on the administrative record (document no. 15) is granted.

The plan administrator's decision is affirmed. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                        /s/ Joseph A. DiClerico, Jr.
                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

February 9, 2010

cc: Nancy L. Hall, Esquire
    William D. Pandolph, Esquire